Y. David Scharf
Kristin T. Roy
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Plaintiff CH Acquisitions 2, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CH ACQUISITIONS 2, LLC,

        Plaintiff,

    -against-

AQUILA AVIATION L.P. AND WELLS FARGO BANK NORTHWEST, NATIONAL ASSOCIATION,

        Defendants,

INSURED AIRCRAFT TITLE SERVICE, INC.

        Nominal Defendant.

Civil Action No.

**COMPLAINT**

Plaintiff, CH Acquisitions 2, LLC ("Plaintiff") alleges for its complaint, based upon its personal knowledge, and upon information and belief as to all other matters, as follows:

### NATURE OF THIS ACTION

1. This action seeks the return of an escrow deposit of $1.5 million in connection with the purchase of an aircraft from Defendants that was terminated as of right when an inspection of the aircraft determined that it was not airworthy.

2. Defendants have refused to consent to the release of Plaintiff's escrow deposit and instead have tried to set a closing for the sale of the aircraft so that they can place Plaintiff in default and claim the escrow deposit for themselves.

## THE PARTIES

3. CH Acquisitions 2, LLC is a Delaware limited liability company, maintaining its principle place of business at 2220 Biscayne Boulevard, Miami, FL 33137 with its members residing in locations other than the British Virgin Islands, Utah and Oklahoma.

4. Aquila Aviation L.P. ("Aquila") is a limited partnership organized under the laws of the British Virgin Islands, maintaining its principle place of business, upon information and belief, in the British Virgin Islands. Aquila does not have an office in New York.

5. Wells Fargo Bank Northwest, National Association ("Wells Fargo," together with Aquila, "Defendants," together with Plaintiff, "Parties") is a duly organized United States banking association, maintaining its principle place of business at 299 South Main Street, MAC: U1228-051, Salt Lake City, Utah 84111.

6. Insured Aircraft Title Service, Inc. is a company incorporated in Delaware, maintaining its principle place of business at 4848 SW 36th Street, Oklahoma City, Oklahoma 73179.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court pursuant to diversity jurisdiction. *See* 28 U.S.C. § 1332. Complete diversity of jurisdiction exists because this action involves a

dispute among citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendants because they contractually consented to jurisdiction in New York.

9. Venue is also properly based in this district pursuant to the contract, which states, "[e]ach of the parties hereto agrees that any legal action or proceeding against it or any of its assets with respect to this Agreement may be brought in . . . any Federal court of the United States of America located in the State and City of New York, Borough of Manhattan."

## FACTUAL ALLEGATIONS

### The Parties Enter Into the Agreement

10. As of January 15, 2016, the Parties entered into a certain Aircraft Purchase Agreement ("Agreement").

11. Through the Agreement, Plaintiff was to purchase from Defendants a Boeing 737-7CG model aircraft, bearing manufacturer's serial number 30751, together with two CFM56-7B27B3 aircraft engines, bearing serial numbers 874966 and 876101, and an installed APU (Honeywell 131-9B) (collectively, "Aircraft") for a purchase price of $27,725,000. *See* Agreement, § 2.

12. Upon the execution of, and pursuant to, the Agreement, Plaintiff placed a $1,500,000 deposit ("Deposit") with Insured Aircraft Title Service, Inc. ("Escrow Agent"). *See* Agreement, § 2 (A).

13. Prior to completing the purchase of the Aircraft, Plaintiff had a contractual right to inspect it. *See* Agreement, § 7. This inspection, conducted at a facility determined by

the Parties, would be used to evaluate whether the Aircraft was in the condition and configuration required by the Agreement. *See* Agreement, §§ 6, 7.

   14. Following the inspection, Plaintiff had three contractual options that it could exercise:

    (i) accept the Aircraft, as is;

    (ii) accept the Aircraft, subject to Defendants' sufficiently remedying any issues raised in the inspection; or

    (iii) reject the Aircraft, should the inspection reveal "any airworthiness discrepancy, major corrosion, or major damage."

*See* Agreement, § 7 (D).

   15. The Agreement provides that should the Plaintiff choose options (i) or (ii), accepting the Aircraft, the Deposit becomes non-refundable to Plaintiff. *See* Agreement, §§ 7 (F), (G). Additionally, the Parties would need to complete the transaction by setting the date on which Defendant would deliver the Aircraft to Plaintiff ("Delivery Date"). *See* Agreement §§ 7 (F), (G). On the Delivery Date, Plaintiff would also wire the balance of the purchase price to Defendants. *See* Agreement, § 2 (B).

   16. Conversely, the Agreement provides that should the Plaintiff choose option (iii), rejecting the Aircraft, "th[e] Agreement shall immediately terminate, the parties shall have no further liabilities or obligations [pursuant to the Agreement] (except for those liabilities and obligations which expressly survive termination), and [Plaintiff's] Deposit together with any other amounts theretofore paid by [Plaintiff] shall be immediately released from escrow and returned to [Plaintiff]." *See* Agreement §§ 7 (E), 29 ("Upon any termination of this Agreement, the parties shall have no further obligation to each other except as expressly provided in this Agreement. If this Agreement is terminated by Purchaser . . . the Deposit together with any

other amounts theretofore paid by Purchaser shall be immediately released from escrow and returned to Purchaser").

**Plaintiff Conducts Its Pre-Purchase Inspection and**
**Uncovers "Airworthiness Discrepancies" and "Major Damage"**

17. Following execution of the Agreement, Plaintiff exercised its right to conduct an inspection of the Aircraft.

18. By agreement of the Parties, Plaintiff used St. Aerospace San Antonio, L.P. to conduct the inspection.

19. The inspection revealed certain defects with the Aircraft, including "airworthiness discrepancies" and "major damage."

**Plaintiff Rejects the Aircraft and Seeks the Return of the Deposit**

20. As a result of the inspection, Plaintiff elected to reject the Aircraft; thereby terminating the Agreement. By a letter dated February 18, 2016, Plaintiff relayed its rejection of the Aircraft to Defendants, and instructed the Escrow Agent to return the Deposit to Plaintiff.

21. By a letter dated February 18, 2016, Defendants objected to the release of the Deposit and have wrongfully sought to keep the Deposit for themselves in contravention of the Agreement.

22. As a contrivance, to prevent Plaintiff from receiving the Deposit, Defendants have acted as if Plaintiff elected option (ii), to accept the Aircraft subject to Defendants' correction of the "airworthiness discrepancies" and "major damage" and here now demand that Plaintiff close the purchase on the Aircraft or lose its Deposit.

23. The Escrow Agent is still holding the Deposit.

## CLAIM I – BREACH OF CONTRACT

24. Plaintiff incorporates by reference and realleges each and every allegation contained heretofore, as though fully set forth herein.

25. The Agreement provides Plaintiff with the right to inspect the Aircraft prior to completing the purchase. Should the inspection uncover any "airworthiness discrepancies," the Agreement allows Plaintiff the right to, among other things, reject the Aircraft. *See* Agreement, § 7 (D).

26. Upon the rejection of the Aircraft, the Agreement would be terminated and Plaintiff would be entitled to the Deposit. *See* Agreement, §§ 7 (E), 29 ("If this Agreement is terminated by Purchaser . . . the Deposit together with any other amounts theretofore paid by Purchaser shall be immediately released from escrow and returned to Purchaser").

27. Here, the inspection uncovered certain issues with the Aircraft, including, among other things, "airworthiness discrepancies" and "major damage." Subsequently, in accordance with the Agreement, Plaintiff chose to reject the Aircraft and seek the return of the Deposit. *See* Agreement §§ 7 (E), 29.

28. To date, in breach of the Agreement, Defendants have inappropriately sought the Deposit for themselves and prevented the Escrow Agent from relinquishing it to Plaintiff. *See* Agreement, §§ 7 (E), 29.

29. Accordingly, Plaintiff has suffered injury as a direct and proximate result of Defendants' actions, including but not limited to, monetary injury. As a result of the conduct alleged herein, Defendants are liable to Plaintiff.

## CLAIM II – DECLARATORY JUDGMENT

30. Plaintiff incorporates by reference and realleges each and every allegation contained heretofore, as though fully set forth herein.

31. The Agreement provides Plaintiff with the right to inspect the Aircraft prior to completing the purchase. *See* Agreement, § 7. Should the inspection uncover any "airworthiness discrepancies," the Agreement allows Plaintiff the right to, among other things, reject the Aircraft. *See* Agreement, § 7 (D).

32. Upon the rejection of the Aircraft, the Agreement would be terminated and Plaintiff would be entitled to the Deposit. *See* Agreement, § 7 (E).

33. Here, the inspection uncovered certain issues with the Aircraft, including, among other things, "airworthiness discrepancies" and "major damage." Subsequently, in accordance with the Agreement, Plaintiff chose to reject the Aircraft and seek the return of the Deposit.

34. Plaintiff claims that it properly terminated the Agreement and it is entitled to a return of the Deposit.

35. Defendants claim that Plaintiff has not properly terminated the Agreement and that any defects in the Aircraft have been remedied. Defendants further claim that if Plaintiff does not close on the purchase of the aircraft by March 18, 2016, Defendants will be entitled to a turnover of the Deposit for their benefit.

36. An actual and justiciable controversy exists as to the rights and obligations of the Parties to the Agreement.

37. Plaintiff seeks a declaration that the termination of the Agreement was proper and that the Escrow Agent should release the Deposit to Plaintiff.

## CLAIM III – DECLARATORY JUDGMENT

38. Plaintiff incorporates by reference and realleges each and every allegation contained heretofore, as though fully set forth herein.

39. The Agreement provides Plaintiff with the right to inspect the Aircraft prior to completing the purchase. Should the inspection uncover any "airworthiness discrepancies," the Agreement allows Plaintiff the right to, among other things, reject the Aircraft. *See* Agreement, § 7 (D).

40. Upon the rejection of the Aircraft, the Agreement would be terminated and Plaintiff would be entitled to receive the Deposit back. *See* Agreement, § 7 (E).

41. Here, the inspection uncovered certain issues with the Aircraft, including, among other things, "airworthiness discrepancies" and "major damage." Subsequently, in accordance with the Agreement, Plaintiff chose to reject the Aircraft and seek the return of the Deposit.

42. Plaintiff notified Defendants of its rejection of the Aircraft by letter dated February 18, 2016. Nevertheless, as a pretext to seeking the Deposit for themselves, Defendants have acted as if Plaintiff elected to accept the Aircraft subject to Defendants' correction of the "airworthiness discrepancies" and "major damage."

43. In that regard, Defendants have sought to deliver the Aircraft to Plaintiff despite Plaintiff's clear termination of the Agreement or otherwise hold Plaintiff in default

44. An actual a justiciable controversy exists as to the rights and obligations of the Parties to the Agreement.

45. Plaintiff seeks a declaration that it properly terminated the Agreement and that it has no further obligation to purchase the Aircraft pursuant to the Agreement.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(i) Determining and awarding to Plaintiff the Deposit and any damages sustained by it as a result of Defendants' breach of the Agreement;

(ii) Declaring that it properly terminated the Agreement and that the Escrow Agent shall return the Deposit to Plaintiff;

(iii) Declaring that Plaintiff has no obligation to accept delivery of the Aircraft from Defendants, as the Agreement is terminated; and

(iv) Granting such other relief, including equitable and injunctive relief, as this Court may deem just and proper.

Dated: New York, New York
March 18, 2016

MORRISON COHEN LLP

By: _____
Y. David Scharf
Kristin T. Roy (
909 Third Avenue
New York, New York 10022
(212) 735-8600
E-mail: dscharf@morrisoncohen.com
        kroy@morrisoncohen.com

*Attorneys for Plaintiff CH Acquisitions 2, LLC*